UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| DELANA RAE GROSVENOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2:17-CV-00089-SPM |
| | ) |
| | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner of Operations, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Nancy A. Berryhill, Deputy Commissioner for Operations, Social Security Administration (the "Commissioner") denying the application of Plaintiff Delana Rae Grosvenor ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Because I find the decision denying benefits was not supported by substantial evidence, I will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

I. **PROCEDURAL BACKGROUND**

On January 13, 2015, Plaintiff applied for DIB, alleging that she had been unable to work since November 1, 2012 due to depression, anxiety, and PTSD; a heart condition; a hiatal hernia; foot problems; eye problems; and insomnia. (Tr. 110-16, 146). Her application was initially

denied. (Tr. 76-80). On June 25, 2015 Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ) (Tr. 81). The hearing was held on July 27, 2016. (Tr. 32-58). The ALJ issued an unfavorable decision on December 21, 2016. (Tr. 13-31). On January 18, 2017, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 109). On October 11, 2017, the Appeals Council declined to review the case. (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II. FACTUAL BACKGROUND

Plaintiff appeared *pro se* at the hearing; and the ALJ informed her of her right to representation, but she elected to go forward. (Tr. 34-36). Plaintiff was born June 19, 1961. (Tr. 42). She drives once or twice a day. (Tr. 43). She has a seventh-grade education and a GED. (Tr. 44). At the time of the hearing, she was working part-time at a restaurant for a couple of hours, twice a week to help cook. (Tr. 45-46).

When asked what symptoms caused her to be disabled, Plaintiff stated that she had a lot of depression and does not like to be around people. (Tr. 48-49). She also has anxiety. (Tr. 50). She has seen a counselor for years, and her nurse practitioner sent her to a psychiatrist for medication adjustments. (Tr. 50).

When asked if there were any physical problems that keep her from working, she answered that her foot is "messed up" and swells very badly. (Tr. 49). She also said that she has been told that she has nerve damage and arthritis in both feet. (Tr. 49). She testified that she can stand for maybe two hours if she is moving, but that if she is on her feet for two hours, her foot swells and she has to put an ice pack on it. (Tr. 49). She was given Lyrica for the nerve damage in her feet, but it gave her weird thoughts, and she quit taking it. (Tr. 50-51). She also testified that she has a

lot of back problems. (Tr. 49). She also said she has headaches a lot but that she just takes Tylenol for them. (Tr. 54).

Plaintiff does not belong to any clubs or groups, does not regularly attend church, and does not often visit with relatives. (Tr. 51). Her activities include crocheting, doing dishes, grocery shopping about twice a month, doing laundry, sweeping, watering plants, dusting, and walking around the house. (Tr. 51-54).

With respect to the medical records and other records in the administrative transcript, the Court accepts the facts as presented in the parties' respective statements of fact. The Court will cite specific records as necessary in the discussion below.

### III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the

claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since November 1, 2012, the alleged onset date; that Plaintiff had the severe impairments of degenerative disc disease, chronic liver disease, alcoholic hepatitis, and chronic alcohol use; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 18-22). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) involving up to frequent climbing of ramps and stairs, and balancing. She can occasionally climb ladders, ropes and scaffolds, stoop, kneel, crouch or crawl. She can tolerate occasional exposure to extreme cold and excessive vibration. She cannot work at unprotected heights or around dangerous machinery.

(Tr. 22).[1] At Step Four, relying on the testimony of a vocational expert, the ALJ found that Plaintiff was capable of performing her past relevant work as a short order cook (*Dictionary of*

---

[1] Light work is defined as follows:
  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may

5

*Occupational Titles* No. 313.462-010), which is performed at the light level of exertion. (Tr. 26). Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from November 1, 2012, through the date of the ALJ's decision, December 27, 2016. (Tr. 27).

## V. DISCUSSION

Plaintiff argues that remand is required for several reasons: (1) the ALJ erred by finding that Plaintiff's foot impairment was not a severe impairment and by not developing the record with regard to Plaintiff's foot impairment; (2) the ALJ erred in finding that Plaintiff's anxiety disorder was not a severe impairment; and (3) the ALJ erred in her evaluation of the opinions of consultative examiner Kathrina Alexander, M.D., and non-examining state agency consultant Denise Trowbridge, M.D., who offered opinions regarding Plaintiff's physical abilities.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's

---

be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

6

decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The ALJ's Evaluation of Plaintiff's Foot Impairment

Plaintiff's first argument is that the ALJ erred in her evaluation of Plaintiff's foot impairment. Specifically, Plaintiff argues that the ALJ's determination that Plaintiff's foot impairment was not a "severe impairment" at Step Two is not supported by substantial evidence. Plaintiff also argues that the ALJ failed to develop the record with regard to Plaintiff's foot impairment, because the ALJ failed to obtain treatment records from Plaintiff's treating podiatrist. Plaintiff contends that these errors, along with the other errors alleged by Plaintiff, resulted in the ALJ making an RFC finding that was not supported by substantial evidence. The Court agrees with Plaintiff that the ALJ's assessment of Plaintiff's foot impairment is not supported by substantial evidence and that remand is required for further consideration and development of the record.

In her Function Report, completed on January 20, 2015, Plaintiff indicated that her feet are "messed up" and that when she is on her feet for long periods, they hurt "to the point of crying." (Tr. 178). She stated that she went to a foot doctor for a while and that the doctor wanted to shave the bones in her feet, but that she did not have the money to do that. (Tr. 178). She also indicated

7

that her conditions affected her ability to do activities including standing and walking, though she can walk long enough to do grocery shopping. (Tr. 183). Asked about her need to take rest breaks when walking, she stated that when she was working, she would "sneak outside an[d] sit in [her] truck for 10 minutes or so every now and then when [she] could." (Tr. 183). At the hearing before the ALJ, on July 27, 2016, when asked if she had anything physically that kept her from working, Plaintiff stated, "My foot." (Tr. 49). She stated that if she is on it more than two hours, it swells really badly. (Tr. 49). She stated that she can stand for maybe two hours, if she is moving, but if she is on her foot in two hours, she is swollen and has to ice pack it. (Tr. 49).

Plaintiff received treatment related to her foot impairment from a podiatrist, Dr. Jonathan Fallis, including two surgeries. Although the record contains no treatment records from Dr. Fallis, Dr. Fallis did submit two opinion letters describing Plaintiff's foot impairment and his treatment of it.[2] On January 14, 2016, Dr. Fallis wrote an opinion letter stating that Plaintiff presented on July 8, 2015 with a painful bunion on her left foot, with decreased range of motion and nerve irritation, and that she underwent surgery on July 29, 2015. Dr. Fallis reported that after the osteotomy healed, Plaintiff had experienced continued nerve irritation and pain from a fixation placed during her surgery. Anti-inflammatories did not relieve her symptoms, and Plaintiff was scheduled for a follow-up appointment and surgical consult on January 20, 2016. Dr. Fallis stated that due to her continued pain and swelling with difficulty wearing shoes and prolonged activity,

---

[2] Under the regulations applicable to Plaintiff's claim, a podiatrist is considered an "acceptable medical source" with respect to impairments of the foot, and thus he is a source whose evidence may establish the existence of a medically determinable impairment and who is considered a "treating source" for purposes of the requirements for evaluating medical opinions. 20 C.F.R. §§ 404.1513(a)(4); 404.1527(a)(2), (c)(2).

8

and based on X-ray findings, an additional surgery was planned, and Dr. Fallis hoped for a possible improvement to the point of return to work one month after surgery. (Tr. 528).

On June 13, 2016, Dr. Fallis wrote a second opinion letter. He stated that Plaintiff had been under his care for a "painful bunion and hallux limitus L foot along with peripheral neuropathy." He stated that "[d]espite surgery on 7/29/2015, [Plaintiff] has continued pain with occasional swelling and limited 1st MPJ range of motion that limits her ability to perform her work duties as a house cleaner." He also stated that Plaintiff was "unable to stand for prolonged periods of time and has difficulty kneeling." (Tr. 565).

In finding Plaintiff's foot impairment not severe, the ALJ acknowledged Plaintiff's complaints of problems with her feet, and then stated:

> Though the claimant alleged she has problems ambulating and wearing shoes, due to ongoing symptoms, she does not require an assistive device to ambulate, and she is able to walk for exercise. She is able to work as a cook on a part-time basis, despite these symptoms. She also feeds the birds, does household chores, and hangs laundry on a line. Based on this discussion, I find this impairment does not cause the claimant more than the minimal functional limitations of her ability to perform basic work activities, and it is nonsevere.

(Tr. 19). Later in the decision, the ALJ stated that she was assigning "little weight" to the opinion of treating podiatrist Dr. Fallis. (Tr. 25). The ALJ found that the opinion was "not consistent with the record as a whole," again pointing to Plaintiff's ability to "perform household chores, han[g] laundry on a clothesline, and walk for exercise, despite her foot symptoms" and Plaintiff's part-time work in a restaurant. (Tr. 25). She did not discuss any additional medical evidence related to Plaintiff's foot impairment.

The ALJ's RFC finding reflected the ALJ's Step Two finding that Plaintiff's foot impairment did not cause significant limitations on Plaintiff's ability to stand or walk. The ALJ found that Plaintiff was capable of "light work," which requires the ability to do a "good deal of

9

walking or standing." 20 C.F.R. § 404.1567(b). Moreover, in finding Plaintiff capable of performing work as a short-order cook, the ALJ relied on the testimony of a vocational expert who stated that a hypothetical individual who could "stand[] and walk[] for about six hours" could perform Plaintiff's past work as a short-order cook. (Tr. 56).

After review of the record as a whole, the Court does not find substantial evidence to support either the ALJ's finding at Step Two that Plaintiff's foot impairment was not a severe impairment or the ALJ's subsequent RFC finding that Plaintiff could perform light work without any standing or walking limitations. A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities include, *inter alia*, "[p]hysical functions such as walking [and] standing." 20 C.F.R. § 404.1521(b).[3] An impairment is not considered severe if it is only a "slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Severity is "not an onerous requirement for the claimant to meet," but it is "not a toothless standard." *Id.*

The ALJ's finding that Plaintiff's foot impairment did not impose significant limitations on Plaintiff's ability to stand or walk was based almost entirely on Plaintiff's statements regarding her daily activities and part-time work at a restaurant. The Court agrees with Plaintiff that the ALJ appears to have overstated the significance of Plaintiff's daily activities and the extent to which they were inconsistent with Plaintiff's and Dr. Fallis's descriptions of the effects of her foot impairment. Plaintiff did testify that she could perform daily activities such as doing dishes, watering plants, dusting, grocery shopping twice a month, feeding her birds, and walking around

---

[3] This regulation and several other Social Security regulations were revised, effective March 27, 2017. The Court refers to the earlier version of the regulations.

the house and outside. (Tr. 53-54). However, those activities, as described, are not necessarily inconsistent with Plaintiff's testimony that she cannot stand for more than two hours due to her foot swelling and pain, nor are they inconsistent with Dr. Fallis's opinion that Plaintiff cannot stand for prolonged periods due to her foot problems. The ALJ did not ask Plaintiff any follow-up questions regarding how long at a time she performs those chores and activities, nor did the ALJ ask Plaintiff how many breaks she takes while doing them or what kinds of difficulties she has in doing them. With regard to Plaintiff's part-time work as a cook, Plaintiff testified that it was performed only two hours at a time, twice a week. (Tr. 45-46). It is unclear from the record whether she was on her feet for those two hours. Regardless, her ability to perform that work is not inconsistent with her testimony that her feet prevent her from being on her feet for *more than* two hours, and it does not suggest that she does not have significant limitations caused by her foot impairment.

The Eighth Circuit has found it improper for an ALJ to rely on very limited activities such as the ones Plaintiff performs to discredit complaints of pain and inability to perform full-time work, particularly where—as here—the ALJ has not considered "the frequency and independence" of those activities and the claimant's "ability to sustain these activities over a period of time." *Reed v. Barnhart*, 399 F.3d 917, 923-24 (8th Cir. 2005) (reversing where the ALJ gave undue weight to Plaintiff's ability to perform daily activities such as laundry and shopping without considering the specific limitations she reported in her ability to do those activities; stating, "this court has repeatedly observed that the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work") (quotation marks omitted). *See also Ford v. Astrue*, 518 F.3d 979, 983 (8th Cir. 2008) (finding that the plaintiff's ability to wash a few dishes, iron one or two pieces of

11

clothing, make three or four meals a weak, and read was not inconsistent with complaints of pain or with the claimant's contention that she was unable to hold a full-time job). Accordingly, the Court does not find that Plaintiff's daily activities constitute substantial evidence in support of the ALJ's findings with regard to Plaintiff's foot impairment.

In addition, the Court finds that the ALJ's evaluation of the opinion of Plaintiff's treating podiatrist was not supported by good reasons and substantial evidence, as required by the relevant regulations. Under the regulations applicable to Plaintiff's claim, if the Social Security Administration finds that a treating source's medical opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Social Security Administration will give that opinion "controlling weight." 20 C.F.R. § 404.1527(c)(2).[4] Where the ALJ does not give a treating physician's opinion controlling weight, the ALJ must evaluate the opinion based on several factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, the consistency of the opinion with the record as a whole, and the level of specialization of the source. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ may discount a treating physician's opinion where, for example, "other medical assessments are supported by better or more thorough medical evidence," *Goff*, 421 F.3d at 790 (internal quotation marks omitted), or the opinion "is inconsistent with the physician's clinical treatment notes." *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009).

---

[4] These regulations apply to claims filed before March 27, 2017. For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated. *See* 20 C.F.R. § 404.1520c(a). The Court will refer to the version of the regulations that applies to claims filed before March 27, 2017.

"When an ALJ discounts a treating physician's opinion, [the ALJ] should give good reasons for doing so." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (quoting *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007)). The failure to give good reasons for discrediting a treating physician's opinion is grounds for remand. *See Anderson v. Barnhart*, 312 F. Supp. 2d 1187, 1194 (E.D. Mo. 2004) ("Failure to provide good reasons for discrediting a treating physician's opinion is a ground for remand"); *Clover v. Astrue*, No. 4:07CV574–DJS, 2008 WL 3890497, at *12 (E.D. Mo. Aug. 19, 2008) ("Confronted with a decision that fails to provide 'good reasons' for the weight assigned to a treating physician's opinion, the district court must remand.").

In assessing Dr. Fallis's opinion, the ALJ did not expressly discuss any of the factors described in § 404.1527(c)(2)-(6), nor did she cite any treatment notes or other medical evidence that was inconsistent with Dr. Fallis's opinion. The ALJ apparently discounted Dr. Fallis's opinion based solely on Plaintiff's descriptions of her daily activities and part-time work—statements that, as stated above, do not appear to be inconsistent with Dr. Fallis's opinion that Plaintiff is unable to stand for prolonged periods due to her foot impairment. The ALJ's reasons do not constitute good reasons, supported by substantial evidence, to discount this opinion.

The Court also agrees with Plaintiff that the record is not sufficiently developed for the ALJ to make a finding that Plaintiff's foot impairment did not limit her ability to perform basic work activities. "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (collecting cases). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008). Remand may be required where the ALJ has failed to adequately develop the record. *See Payton*

*v. Shalala*, 25 F.3d 684, 686 (8th Cir. 1994) (remanding for further development of the record where the ALJ found the claimant not disabled without waiting to obtain records of a treating physician's evaluation where the existing record was not sufficient for the ALJ to make a determination about the effects of Plaintiff's back impairment).

Here, Plaintiff's foot impairment was the primary physical problem cited by Plaintiff in her testimony, and her treating podiatrist's opinion letters supported her allegations. Moreover, Plaintiff's testimony and the podiatrist's opinion letters placed the ALJ on notice of the existence of treatment records, surgery records, and X-ray results not in the record that relate to Plaintiff's foot impairment. The current record contains little or no other evidence bearing on the effects of Plaintiff's foot impairment on her ability to walk or stand for extended periods. Despite these facts, there is no indication in the record that the ALJ attempted to obtain those records or other medical evidence related to Plaintiff's foot impairment. The Court concludes that the record is not fully developed with regard to this impairment.

For all of the above reasons, the Court finds that the record does not contain substantial evidence to support the ALJ's assessment of Plaintiff's foot impairment at Step Two, the ALJ's assessment of the opinion of Plaintiff's treating podiatrist, or the RFC finding. Therefore, remand is required. On remand, the ALJ should further develop the record regarding Plaintiff's foot impairment, including attempting to obtain treatment records related to that impairment from Plaintiff's treating podiatrist. Because remand is required for re-evaluation of Plaintiff's severe impairments, the Court need not address Plaintiff's remaining arguments.

## VI. CONCLUSION

For the reasons set forth above, the Court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

                                                  /s/ Shirley Padmore Mensah
                                                  SHIRLEY PADMORE MENSAH
                                                  UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of March, 2019.